TERRI KEYSER-COOPER
Law Office of Terri Keyser-Cooper
Nevada Bar No. 3984
3590 Barrymore Dr.
Reno, NV 89512
(775) 337-0323
keysercooper@lawyer.com

LUKE A. BUSBY
Luke Andrew Busby, Ltd.
Nevada Bar No. 10319
216 East Liberty St.
Reno, NV 89501
(775) 453-0112
luke@lukeandrewbusbyltd.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BENJAMIN BEKKER,<br><br>   Plaintiff(s),<br><br>   vs.<br><br>CHARTER COMMUNICATIONS, LLC.,<br><br>   Defendant.<br>_____/ | Case No.<br><br>**COMPLAINT**<br><br>**JURY DEMAND** |

COMES NOW, BENJAMIN BEKKER ("Bekker" or "Plaintiff"), a married man, by and through the undersigned counsel, and files the following complaint seeking redress for his unlawful termination from Charter Communications ("Charter" or "Defendant") in violation of the Family Medical Leave Act ("FMLA").

JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 29 U.S.C. § 2601 in that this case arises under federal law, specifically, the FMLA.

2. Venue is proper in the Northern District of Nevada pursuant to 28 U.S.C. Section 1391(b) because the unlawful acts giving rise to Plaintiff's claims occurred in this District.

3. This Court has jurisdiction to grant the declaratory relief requested pursuant to 28 U.S.C. Section 2201 and the Federal Rules of Civil Procedure, Rule 57.

## PARTIES

4. Bekker, at all relevant time hereto, resided in Fernley, Nevada.

5. Charter Communications, LLC, is a Delaware Limited Liability Company and is duly authorized to conduct business in the State of Nevada.

6. All the acts and failures to act alleged herein were duly performed by and attributable to all Defendants, each acting as a successor, agent, alter ego, employee, indirect employer, joint employer, integrated enterprise and/or under the direction and control of the others, except as specifically alleged otherwise. Said acts and failures to act were within the scope of such agency and/or employment, and each Defendant participated in, approved and/or ratified the unlawful acts and omissions by the other Defendants complained of herein. Whenever and wherever reference is made in this Complaint to any act by a Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly, and/or severally.

## STATEMENT OF FACTS

7. Bekker, 58, worked at Charter for over seventeen years. Bekker began his career at Charter as a Technician in January of 2000, and worked his way up to the position of Technical Supervisor, which he held from June of 2012. This position required that Bekker supervise up to and including fourteen Charter employees.

2

8. Bekker was an outstanding employee during his seventeen-year tenure at Charter. Bekker received three promotions during his employment with Charter and significant raises. Bekker's most recent raise was in December 2016—a raise based solely on merit.

9. Bekker is a cancer survivor.  On or about 2007, Bekker he was diagnosed with cancer, specifically a large tumor in his back requiring surgery and radiation treatments. Bekker was off approximately 30 days and to his knowledge has not experience a recurrence of his cancer. However, since receiving treatments for his cancer, Bekker suffers from severe back pain requiring multiple medications and is currently under treatment from a pain management specialist.  Bekker also suffers from arthritis in his lower back. Bekker's back problems require continual monitoring but does not interfere with his ability to perform his job requirements at Charter.

10. Bekker has a heart condition. On or about August 4, 2012, Bekker suffered a heart attack and was off work for three weeks. Bekker's heart condition is monitored by a physician but does not interfere with his ability to perform his job requirements at Charter.

11. In October of 2016, Bekker's supervisor at Charter, Mr. Rickey Boucher was replaced by Mr. Cory Anderson. Under Mr. Boucher, Bekker's performance reviews were either on target or above target.  Shortly after Mr. Anderson became Bekker's supervisor, Bekker's troubles at Charter began. Mr. Anderson, aware of Bekker's health issues, began a campaign to get rid of Bekker within days of his arrival. Mr. Anderson began immediately writing Bekker up for matters that were previously acceptable to Mr. Boucher.

12. On October 6, 2016, Bekker received a "coaching" from Anderson for "performance" issues.  This "coaching" was for participating in a conference call from his

home in Fernley, rather than Charter's office. This conduct had been Bekker's custom and practice for many years and was previously acceptable to Mr. Boucher and to Charter.

13. On October 17, 2016, Bekker received a written warning for attendance (for calling in sick) and for punctuality. Bekker was issued the warning at a meeting at which both Mr. Anderson and a representative from Charter's Human Resources department, Ms. Amanda Zinger). At this October 17, 2017 meeting, Bekker explained that he was missing work because he was having problems with his back pain. In response Bekker's explanation, Ms. Zinger suggested that Bekker consider taking FMLA leave he was going to continue to have attendance problems.

14. Shortly after the October 17, 2016 meeting, Within Bekker called Charter and inquired about FMLA leave. Bekker's request for FMLA leave was unlawfully interfered with, discouraged, and delayed by Charter. Charter not only refused to authorize Bekker's FMLA leave or to make reasonable inquiries as to his needs and requirements, as required by law, but also declined to provide him with documents or information on his rights pursuant to the FMLA. Instead, Bekker was told by email by Charter Human Resources employee Lindsay Day, that Charter's current FMLA application system was "going away," and that a contractor called "Sedgwick" would be taking over the FMLA leave system on January 1st, 2017, and that Bekker should "hold off on his leave request" until that time.

15. Bekker, anxious to secure his FMLA protections, telephoned Lindsay Day regarding when he could apply for FMLA. Bekker communicated to Ms. Day many times, through email and telephone. Bekker was declined, restrained, and delayed in obtaining FMLA because, as Ms. Day communicated to him, "Charter was not ready to sign him up for FMLA because it was transferring FMLA procedures to Segwick." Ms. Day

communicated that she "didn't know" how FMLA would work under Segwick and repeatedly told Bekker to "wait" and she would "get back to him" when she had more information.

16.  Charter, through its agents Mr. Anderson and Ms. Zinger, declined to inquire as to specific facts to determine the reasonableness and necessity of FMLA leave or to inform Bekker of his rights and entitlements. It was at all times the duty of Charter to immediately initiate a procedure to determine whether Bekker qualified for FMLA and to see that his rights were protected. It was at all times Charter's responsibility to fulfill its duties to Bekker as required by the FMLA.

17.  On December 6, 2016, Bekker received another "coaching" from Cory Anderson and Amanda Zinger for business ethics and integrity for copying and pasting content from employee evaluation to employee evaluation when the exact comments were made. Bekker had engaged in this practice for many years while working at Charter and reviewing those who he supervised. This conduct had been Bekker's custom and practice for many years and was previously acceptable to Mr. Boucher and to Charter.

18.  On December 12, 2016, Bekker received another "coaching" from Mr. Anderson for attendance, punctuality for taking too many sick days.  At this coaching, Bekker again communicated to Anderson that he was missing work because of his back issues. Mr. Anderson was aware of Bekker's inquiry into FMLA protections.

19.  Between December 12, 2016 and January 19, 2017, Bekker communicated intermittently with Lindsay Day re FMLA leave request, an was told on several occasions to hold off because the transition to Sedgwick was not complete. Bekker at all times made clear he was anxious to sign up for FMLA protections, he asked Ms. Day, "When can I sign

5

up?" and "Do you have the telephone number for the FMLA person I must speak to?" Bekker was told to wait.

20. On January 10, 2017, Bekker received a final written warning from Mr. Anderson for attendance and punctuality. This "attendance" issue was directly relatedly to Bekker's need for medical treatment and pain management consultations with his physician.

21. On January 19, 2017 Bekker applied for FMLA leave through Sedgwick representative Alexis Aragon.

22. On January 30, 2017, eleven days after notice of taking FMLA leave, Bekker met with Cory Anderson and Amanda Zinger. Bekker was asked if he wanted to resign from Charter. Bekker, shocked, responded that he did not desire to resign. Bekker had worked his way up at Charter and required FMLA protections, not a termination. Bekker was emotionally distraught and tearful at being asked to resign.

23. On January 31, 2017, Bekker was fired by Amanda Zinger. The reasons listed for Bekker's termination on the "Corrective Action Report" are, "Ben Bekker failed to meet the performance expectations of the Supervisor, Tech Services job description. This are violation of policy." Bekker was depressed, anxious, distraught, and severely emotionally disturbed when on he was called by Ms. Singer to turn in all his equipment and uniforms.

24. Charter interfered with, restrained, or denied the exercise of or the attempt to exercise of Bekker's rights under the FMLA.

25. Under 29 U.S.C. Section 2615(a)(1), it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" the substantive rights guaranteed by FMLA. When a party alleges a violation of Section 2615(a)(1), it is known as an "interference" or "entitlement" claim.

26. Congress has authorized the Department of Labor ("DOL") to issue implementing regulations for the FMLA, 29 U.S.C. Section 2654. These regulations are entitled to deference. DOL regulations state that "[t]he FMLA prohibits inference with an employee's rights under the law." Any violation of the FMLA itself or of the DOL regulations constitute interference with an employee's rights under the FMLA. The DOL interprets "interference" to include "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." The regulations specify employers cannot use the taking of FMLA leave as a negative factor in employment actions. The statute and the accompanying regulations protect an employee from any employer actions that discourage or interfere with the right to take FMLA leave.

27. Charter through its agents Mr. Anderson and Ms. Zinger intentionally interfered with Bekker's need to take FMLA for visits to his physician and for treatment of chronic pain. Mr. Anderson and Ms. Zinger interfered with the length and dates of leave and denied leave outright choosing instead to discipline Bekker for his need to take medical leave.

28. The Plaintiff is informed and believes, and thereon alleges, that Defendants deny that its actions and/or failures to act were unlawful. Declaratory relief is therefore necessary and appropriate now so that Plaintiff can ascertain him rights.

29. Defendants acted or failed to act as herein alleged with malice or deliberate indifference to the protected rights of the Plaintiff.

30. The Plaintiff has suffered economic and compensatory damages because of the conduct of the Defendants.

///

## FIRST CAUSE OF ACTION

*Unlawful Interference with the Plaintiff's seeking FMLA Leave*

31. Plaintiff repeats and realleges the allegations set forth in the foregoing Paragraphs as though fully set forth herein.

32. Upon information and belief, at all times material hereto Defendant employed in excess of fifty (50) employees within a seventy-five (75) mile radius of the work site and is an "employer" as defined in §101(4)(A) of the FMLA at 29 U.S.C. §2611(4)(A).

33. At all times material hereto, Plaintiff was an "eligible employee" as defined in §101(2) of the FMLA at 29 U.S.C §2611(2) in that Plaintiff had worked for Defendant for more than twelve months and for more than 1,250 hours in the twelve-month period preceding him absences.

34. The medical condition from which Plaintiff suffers requires continuing treatment and medical attention and occasionally prevented him for performing the essential functions of him position. Thus, Plaintiff's condition qualified under the FMLA as a serious health condition. A serious health condition is defined as an illness, injury, impairment, or physical or mental condition that involves: inpatient care in a hospital, hospice, or residential medical care facility or continuing treatment by a health care provider. U.S.C. Section2611 (11). Plaintiff exercised his rights from time to time to take time off to attend to his serious health condition as was fired as a result.

35. Bekker gave notice of his intention to take FMLA leave to the Defendant as described above. Bekker was eligible for FMLA protections; Charter was covered by the FMLA; Bekker was entitled to leave under the FMLA; Bekker provided sufficient notice of his intent to take FMLA leave; and, Charter denied Bekker his FMLA benefits to which he

8

was entitled.

36. At all times Bekker was qualified for FMLA leave.

37. Defendant interfered with, discouraged, restrained, or denied the exercise of or the attempt to exercise of the Plaintiff's rights under the FMLA. Defendant's acts and omission are in violation of the anti-interference and anti-discrimination provisions of §105(a) of the FMLA [29 U.S.C. §2615(a)]. Charter's suggestion that Bekker delay FMLA leave to accommodate Charter's business needs, constitutes interference with Bekker's FMLA rights.

38. Bekker's protected conduct in requesting FMLA leave was a substantial or motivating factor in Charter's decision to terminate Bekker.

39. As a direct and proximate result of Defendants unlawful acts, Plaintiff has suffered loss of wages, employment benefits, as well as backpay and front pay, and other compensation and is entitled to an award to compensate him for those losses. Plaintiff also intends to seek equitable relief including but not limited to reinstatement and promotion.

40. Pursuant to the FMLA, Plaintiff is also entitled to an award of prejudgment interest at the prevailing rate from the date of the unlawful retaliation to the date of judgment on the award of wages, employment benefits, and other compensation lost to him as a result of Defendant's violations of the FMLA.

41. Plaintiff is entitled to liquidated damages doubling the award of interest, wages, lost employment benefits, and other compensation lost to him as a result of Defendant's violations of the FMLA as Defendant did not act in good faith and based upon reasonable grounds to believe that it was following the FMLA.

42. As a further direct and proximate result of Defendant's violations Plaintiff has

been required to obtain the services of an attorney and she is entitled to an award of reasonable attorney's fees and the costs and expenses of this action.

43. Defendant's unlawful actions were intentional, willful, malicious and/or done with deliberate indifference to Plaintiff's rights.

## SECOND CAUSE OF ACTION

*Retaliatory Termination of Employment in Violation of the FMLA*

44. Plaintiff repeats and realleges the allegations set forth in the foregoing Paragraphs as though fully set forth herein.

45. Upon information and belief, at all times material hereto Defendant employed in excess of fifty (50) employees within a seventy-five (75) mile radius of the work site and is an "employer" as defined in §101(4)(A) of the FMLA at 29 U.S.C. §2611(4)(A).

46. At all times material hereto, Plaintiff was an "eligible employee" as defined in §101(2) of the FMLA at 29 U.S.C §2611(2) in that Plaintiff had worked for Defendant for more than twelve months and for more than 1,250 hours in the twelve-month period preceding him absences.

47. The medical condition from which Plaintiff suffers required medical attention and prevented him for performing the essential functions of him position from time to time. Thus, Plaintiff's condition qualified under the FMLA as a serious health condition. Plaintiff exercised him rights from time to time to take time off to attend to him serious health condition as was fired as a result.

48. Defendant retaliated against Plaintiff for him exercise of him rights under the FMLA, by unlawfully discharging the Plaintiff. Plaintiff exercised his protected right to seek FMLA protections and was terminated within eleven days of officially signing FMLA

documents. A causal connection exists between Plaintiff's exercise of protected rights and the adverse action of termination.

49. Defendant's alleged reason for Plaintiff's termination, that he was not fulfilling the requirements of his job description, a job he had held for more than seventeen years (and had as recently as one month before termination received a merit based salary increase) is pretext for the real reason for the termination. Defendant's acts and omission are in violation of the anti-interference and anti-discrimination provisions of §105(a) of the FMLA [29 U.S.C. §2615(a)]

50. As a direct and proximate result of Defendants unlawful acts, Plaintiff has suffered loss of wages, employment benefits, and other compensation and is entitled to an award to compensate him for those losses.

51. Pursuant to the FMLA, Plaintiff is also entitled to an award of prejudgment interest at the prevailing rate from the date of the unlawful retaliation to the date of judgment on the award of wages, employment benefits, and other compensation lost to him as a result of Defendant's violations of the FMLA.

52. Plaintiff is entitled to liquidated damages doubling the award of interest, wages, lost employment benefits, and other compensation lost to him because of Defendant's violations of the FMLA as Defendant did not act in good faith and based upon reasonable grounds to believe that it was following the FMLA.

53. As a further direct and proximate result of Defendant's violations Plaintiff has been required to obtain the services of an attorney and she is entitled to an award of reasonable attorney's fees and the costs and expenses of this action.

54. Defendant's unlawful actions were intentional, willful, malicious and/or done

11

with deliberate indifference for Plaintiff's rights.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

(a) Enter a declaratory judgment that the actions complained of in this complaint are unlawful and violate the FMLA.

(b) Order Defendants to pay the wages, salary, employment benefits, and other compensation denied or lost to Plaintiff to date by reason of Defendants' unlawful actions, in amounts to be proven at trial;

(c) Order Defendants to pay compensatory damages for the Plaintiff emotional pain and suffering, in an amount to be proven at trial;

(d) Order the Defendants to pay liquidated damages as provided by law;

(e) Order Defendants to pay attorneys' fees and costs of the action;

(f) Order Defendants to pay interest at the legal rate on such damages as appropriate, including pre- and post-judgment interest; and,

(g) Grant any legal and equitable relief that the Court deems just and proper.

DATED: Friday, March 31, 2017

By: _____
TERRI KEYSER-COOPER
LUKE ANDREW BUSBY
*Attorneys for Plaintiff Ben Bekker*